**FOSS et al. v. COMMISSIONER OF IN-
TERNAL REVENUE.**

**No. 2930.**

Circuit Court of Appeals, First Circuit.

Jan. 16, 1935.

Philip Nichols, of Boston, Mass., for petitioners.

Arnold Raum, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is a petition by the taxpayer to review a decision of the Board of Tax Appeals which sustained the validity of additional income taxes assessed against him for the years 1920 and 1921. Two principal questions are presented—first, whether certain amounts paid by the petitioner during the years in question as attorney's fees were a proper deduction from gross income; second, whether the petitioner in 1920 made a taxable gain on the sale of certain stock, and, if so, whether the gain was as great as was found by the Commissioner.

As to the first point: The facts are not in dispute. In January, 1914, Foss owned a majority of the stock of the American Blower Company. He was also heavily interested in, and connected with the management of, the B. F. Sturtevant Company, which was in the same line of business. Minority stockholders in the Blower Company filed a bill in equity against him in the federal court in New York alleging that he and certain others were in combination to waste the assets of the Blower Company and divert its business to the Sturtevant Company, and to violate the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15 note). The District Court found in favor of the plaintiffs; it enjoined Foss and his associates from doing the illegal acts specified and also from voting their stock in the Blower Company. On appeal, the Circuit Court of Appeals in the Second Circuit vacated the last part of the order and allowed Foss and his associates to vote their stock. Davidson v. American Blower Co., 243 F. 167. Foss paid his personal counsel for services in this litigation $5,000 in 1920, and $32,479 in 1921. He contended that these payments were proper deductions from his gross income in those years; the Commissioner refused to allow them.

During the period in question Foss was a man of many interests and activities. He was president of a manufacturing company, of a water company, and of a real estate company. He was director of many other companies, including banks, railroads, and a stockyard. From 1911 to 1913 he was Governor of Massachusetts. He maintained an office and a personal secretary, and he kept books of account. He was a man of considerable property, which was invested in various enterprises; and, after finishing his terms as Governor, he devoted his time to looking after his investments and to the operations of the various corporations in which he was an officer.

The statute in question reads as follows:

"Sec. 214. (a) That in computing net income there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *

"Sec. 215. That in computing net income no deductions shall in any case be allowed in respect of—

"(a) Personal, living, or family expenses." Revenue Act of 1918, §§ 214 (a) (1), 215 (a), 40 Stat. 1066, 1069.

The Commissioner held that Foss was not carrying on any business for which the counsel fees in question were ordinary and necessary expenses, and that they were therefore not deductible; and the Board of Tax Appeals took the same view. What constitutes carrying on business under this statute has often been considered by the courts; there are many decisions upon the question, some of them involving counsel fees. In Washburn v. Commissioner (C. C. A.) 51 F.(2d) 949, the petitioner's activities closely resembled those of Foss. He was a retired lawyer who gave his whole time to enterprises in which he had investments. It was held that he was engaged in business. We agree with that decision. A person of property, who devotes his time to the active management of it and also to active participation in the management of the companies in which his property is invested, and who maintains an office for that purpose where

he spends a substantial part of his time, is carrying on business within the meaning of this statute. If Foss had employed somebody else to look after his affairs, that person would certainly have been engaged in business; and we think that Foss, in attending to his affairs himself, was equally engaged in business. The line comes between those who take the position of passive investors, doing only what is necessary from an investment point of view, and those who associate themselves actively in the enterprises in which they are financially interested and devote a substantial part of their time to that work as a matter of business. The maintenance of an office for this purpose, though not conclusive, is significant. We are of opinion that Foss was carrying on business within the meaning of the statute.

We entertain no doubt that the counsel fees in question were an ordinary and necessary expense of that business. The test is stated in Kornhauser v. United States, 276 U. S. 145, 153, 48 S. Ct. 219, 220, 72 L. Ed. 505, in which it was said, "Where a suit or action against a taxpayer is directly connected with, or, as otherwise stated, * * * proximately resulted from, his business, the expense incurred is a business expense," etc. Sutherland, J. The litigation was plainly an outgrowth of the business activities in which Foss was engaged. He was brought into the suit, not as the government contends, simply because of his stock ownership in the Blower Company, but because of his stock ownership and business activity in the Sturtevant Company *and* the Blower Company. It was his business activities in those connections which exposed him to the suit. Under such circumstances counsel fees are a deductible expense, as was expressly held in the Kornhauser Case. See, too, Commissioner v. Continental Screen, 58 F.(2d) 625 (C. C. A. 6); Commissioner v. People's Pittsburgh Trust Co. (C. C. A.) 60 F.(2d) 187.

The second question before us relates to the alleged profit made by Foss on a sale in 1920 of 1,200 shares of the common stock of the Sturtevant Company. He received for it $116,000, i. e., $93 per share; no question arises as to that factor in the computation. He had acquired the stock some years before March 1, 1913. Both parties took the value of the stock on that date as the amount on which the profit was to be figured. The Commissioner found in effect that this value was $50 per share. In 1917 there was a 100 per cent. stock dividend on the stock; and

the Commissioner adjusted his figure accordingly. Foss contends that this was a great undervaluation, that the stock was worth more than $200 per share in 1913 ($100 on the 1920 basis), and that the sale in 1920 resulted in a loss rather than in a profit. The Board of Tax Appeals affirmed the Commissioner's finding; and the question before us is whether its action was so clearly wrong as to be in legal effect arbitrary and unfair. Blackmer v. Commissioner (C. C. A.) 70 F.(2d) 255, 92 A. L. R. 982; Helvering, Commissioner, v. Taylor, 293 U. S. 507, 55 S. Ct. 287, 79 L. Ed. ——, January 7, 1935.

Four points are made by the petitioner against the decision of the Board: (1) That it accepted a report and determination on the case from a member who did not originally hear it, and who acted under a serious misapprehension as to the understanding on which the case was tried; (2) that important evidence was wrongly excluded by the member who heard the matter; (3) that a wholly unqualified person called as a witness by the Commissioner was permitted to testify as an expert on the value of the stock; and (4) that the decision of the Board does such violence to the evidence as to be unreasonable and arbitrary and clearly wrong.

The petitioner's first point involves a question of practice. The matter was heard by Mr. Love of the Board of Tax Appeals in October, 1932. Mr. Love died in April following without having made any report or determination of the matter. Thereupon, apparently without notice to the petitioner, the chairman of the Board of Tax Appeals assigned the matter to Mr. Murdock, another member of the Board, for completion. Mr. Murdock took the transcript of the evidence which had been introduced before Mr. Love and on it made a determination and report to the Board which was confirmed by the Board. The taxpayer was not notified of this substitution, and does not appear to have known anything about it until the decision was made. After he learned of it, he made no request for a rehearing; and there is no assignment of error on this ground in his petition for review.

The statute is as follows: "The chairman may from time to time divide the Board into divisions of one or more members, assign the members of the Board thereto, and in case of a division of more than one member, designate the chief thereof. If a division, as a result of a vacancy or the absence or inability of a member assigned thereto to

serve thereon, is composed of less than the number of members designated for the division, the chairman may assign other members to the division or direct the division to proceed with the transaction of business without awaiting any additional assignment of members thereto. A division shall hear, and make a determination upon, any proceeding instituted before the Board and any motion in connection therewith, assigned to such division by the chairman, and shall make a report of any such determination which constitutes its final disposition of the proceeding." Revenue Act 1924, § 906 (a), as added by Revenue Act 1926, § 1000, as amended by Revenue Act 1928, § 601 (26 US CA § 1217 (a).

In the present case Mr. Love constituted a division to hear the case, and Mr. Murdock a division to succeed him. If the matter had been a proceeding in court, there is great doubt, to say the least, whether Mr. Murdock could have decided it after Mr. Love's death on the record made by him and without rehearing, except upon the assent of the parties. La Bonte v. La Casse, 78 N. H. 489, 102 A. 540; In re Sullivan, 143 Cal. 462, 467, 77 P. 153; Wainwright v. P. H. & F. M. Roots Corp., 176 Ind. 682, 698, 97 N. E. 8. The Board of Tax Appeals, however, is an administrative body, not bound by the rules of procedure which prevail in common-law and equity courts. It is free to get at the facts in any way which it deems proper, within the bounds of reason and fairness. Blair v. Curran (C. C. A.) 24 F.(2d) 390. It could have originally appointed a commissioner to take the testimony and have decided the case on the evidence as reported by him. Until comparatively recently, testimony in equity cases in the federal courts was taken in this way; and the first instance judge rarely saw or heard the witnesses. We think there can be no doubt that the Board of Tax Appeals had the right, if it saw fit to do so, to consider the matter on the stenographic report of the testimony taken by Mr. Love and on the report and determination made by Mr. Murdock. The statutory provisions respecting the powers of a *"division"* of the Board are, we think, intended to define the powers of a division, but not to limit the general powers of the Board itself. The fact that no member of the Board which decided the case saw the witnesses lessens the weight of its findings. As was said in Jewett & Co. v. Commissioner, 61 F.(2d) 471, 472 (C. C.

A. 2), "We have as much before us as those members who decided the case." L. Hand, J.

The petitioner's next complaint is that Mr. Murdock in determining and reporting on the case to the Board acted under a serious misapprehension as to what had occurred in the hearing before Mr. Love. It is stated by counsel for the petitioner and not denied that all parties before him understood that evidence of certain basic facts involved in this proceeding had been introduced in the Sturtevant Company case which was then pending before the Board, and that that record might be looked at in order to ascertain them. Mr. Murdock, taking the case after Mr. Love's death and without reargument, apparently did not so understand the matter, and made his report to the Board of Tax Appeals acting under misapprehension on this point.

The petitioner's second and third points involve matters of evidence. He offered to show by the testimony of an accountant called by him that the valuation of the fixed assets of the Sturtevant Company as of March 1, 1913, for which he contended, had been originally arrived at, subject to certain relatively unimportant additions, by the Commissioner of Internal Revenue and accepted by the Sturtevant Company, and that this valuation had been used as the basis on which the excess profits tax was imposed on the company in 1917. There was uncontradicted testimony that the same figures were adopted by the Commissioner in making his valuation of the fixed assets of the company as of December 31, 1912. This offered evidence was excluded. It would seem to have been clearly admissible.

The petitioner's last point is that on the evidence submitted the decision of the Board was clearly wrong and was arbitrary and unreasonable. According to the evidence of the petitioner, the asset value of the Sturtevant Company stock on March 1, 1913, was over $200 per share as the capital then stood without including anything for patents. The Sturtevant Company, was essentially a family concern. There do not appear to have been any public sales of its stock, and no sales of any kind which would throw much light on its fair market value. In connection with the capital stock tax of 1917, the Commissioner took the position that the fair market value of the stock of this company should be determined on the asset values. At that time the Sturtevant

Company objected to valuation on that basis and contended that a much lower figure, about $60 a share for the new stock, was proper. The Commissioner rejected this contention and assessed the stock on the basis of the asset value. His present position is a complete reversal of his position and decision at that time. The only witness called by the Commissioner in the present proceeding was the same "valuation appraisal engineer" who testified in the Sturtevant Company Case, 75 F.(2d) 316, and whose qualifications, or lack of qualifications, are referred to in our opinion in that case. The petitioner objected that the witness was not qualified to give opinion evidence on the value of shares of stock in 1913. By the standards which obtain in legal proceedings he clearly was not qualified. The Board of Tax Appeals is not bound in such matters by the rules of evidence; but, in reviewing its findings which rest on the testimony of this witness, his obvious lack of qualifications and the extreme character of his views cannot be disregarded. He testified that the old stock of the Sturtevant Company was worth on March 1, 1913, "around $93" per share; that "in determining the value of the stock of corporations we do not consider the quick assets on the basis of the net income which we use;" "I have not considered the quick assets" (italics supplied); that the average earnings of the Sturtevant Company from 1909 to 1912, inclusive, were $233,000 per year; and that the gross value of its capital stock was about ten times that figure. Mr. Love, while the hearing was in progress, said of the testimony of this witness: "He bases his valuation of stock simply by taking the earnings and capitalizing them at 10 per cent. He has disregarded investment and the net value of the assets * * * and he just values the stock on the basis of earnings at ten per cent." (Italics supplied.) To which the witness replied, "That is true."

▉▉▉ It is common knowledge that within recent years there has been a great change in the weight given to the value of fixed assets in determining the value of corporate stock. But even now we hardly think it reasonable to disregard quick assets in placing a value upon stock, especially where, as here, substantial amounts of the quick assets were in cash or in the equivalent of cash. The valuation called for was, however, that of March 1, 1913, when conditions were very different. See Walter v. Duffy (C. C. A.) 287 F. 41. The Commissioner had in effect so held as above stated. To make the required valuation of this stock called for a high degree of specialized knowledge of conditions and values at that time, which the witness does not appear to have had. The Board of Tax Appeals in effect accepted his testimony, disregarding in so doing the previous position and decision of the Commissioner on the same question, and also disregarding the value of the assets of the corporation. Obviously, the true value of the Sturtevant Company stock did not depend on the purpose for which the inquiry was made. Having been fixed by the Commissioner for the purpose of taxing the corporation, he and the Board ought to have adhered to it unless it was shown to have been erroneous. The Board of Tax Appeals did not consider this aspect of the matter at all.

▉▉▉ To summarize, in the hearing before the Board, competent and significant evidence was improperly rejected; the Commissioner's previous position and decision on the same point were disregarded; evidence upon a highly technical and difficult question of valuation was accepted from a witness who clearly had no qualifications to speak on such a topic; and, finally, the report to the Board was made by a member who never saw the witnesses and who misapprehended the testimony which was to be considered as in the case. The effect of these taken together is that the findings of the Board were not based on all the evidence in the case and seem to us to have been arrived at in an arbitrary and unfair manner, and due process has been denied the petitioners.

The decision of the Board is reversed, and the case is remanded for a rehearing in accordance with this opinion.