## BING v. HELVERING, Commissioner of Internal Revenue.

### No. 289.

Circuit Court of Appeals, Second Circuit.

April 8, 1935.

Lewis M. Isaacs, of New York City, for appellant.

Frank J. Wideman, Asst. Atty. Gen., and J. Louis Monarch, L. W. Post, and Carlton Fox, Sp. Assts. to Atty. Gen., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The question on which this case turns is whether a payment of $35,000 made by

the taxpayer in the year 1929 was an ordinary and necessary expense of his business under section 23 (a) of the Revenue Act of 1928 (26 USCA § 2023 (a); or an investment which must await the disposition of certain shares of stock. Bing, the taxpayer, was engaged in the real estate business with his son. He bought and sold parcels of land, on some of which he built; he also built on the land of others, and he managed buildings, both his own and others. When he had to borrow, or when he bought, he usually incorporated a company to hold title; he also had organized a company to manage the buildings of which he had charge, and a construction company to do the building. In 1928 an acquaintance of his, named Gans, suggested that it might be possible to persuade some bankers, whom Gans knew, to join with Bing in his real estate ventures. Bing assented, and Gans introduced him to a banking company, which after some negotiation Bing induced to incorporate a new company with him, whose shares they should own, half and half, and to which the bankers were to lend $5,000,-000. This company was to engage generally in buying and selling land, and to finance the construction of buildings upon it and their operation when erected; it was, in short, to do in general the kind of business that Bing and his son had been doing theretofore. Bing agreed to give as much time to it as was necessary and not to compete with it, though he was free to complete pending deals, and to take up new ones whenever the new company's funds were fully employed; he could also buy any "real estate securities listed on any exchange." For his services he was to get the usual commissions for collecting rents and managing buildings and in addition 3 per cent. upon the cost of any buildings put up by the company; the last being the estimated amount of his personal outlay. The company was incorporated; the bankers lent it the money as agreed, and Bing and they divided the shares. Bing's duties took about three-quarters of his time. He paid Gans a commission of $35,000 for his services in securing the loan; it is not disputed that there was an implied agreement that he should pay something, and that the amount paid was not excessive. The board regarded this payment as part of Bing's investment in the new shares and refused to treat it as an ordinary and necessary expense of his business.

We do not doubt that if the whole payment can be regarded as made to carry on Bing's trade or business, it was "ordinary and necessary." Though it is hard for us to understand why he should not have felt free to go directly to the bankers, nobody disputes that, as business was done in those days and perhaps is still done, the supposed amenities of an introduction by a go-between were regarded as necessary. We are in no position to gainsay what from the outside appears so preposterous. That the outlay was "ordinary" is also true; not indeed in the sense that it was not unique in Bing's career, as perhaps it was, but because people frequently did business in this extraordinary way. Welch v. Helvering, 290 U. S. 111, 114, 54 S. Ct. 8, 78 L. Ed. 212. But whether it was made to "carry on" Bing's business, or merely to secure a new investment, or both, is another matter. Had the new company, like some of his earlier ones, been owned by him alone, though organized to hold land, or to put up buildings, or to manage them, the answer would be easy. Such companies had been instrumental in "carrying on" a single business, which had enough unity pro tanto to satisfy the implications of common speech. Foss v. Commissioner, 75 F.(2d) 326 (C. C. A. 1). But the new company was not like those; it was a joint enterprise undertaken with the bankers to do as much of Bing's old business as the new capital could finance; it was not in any real sense ancillary to the separate business which he retained. The fact that Burnet v. Clark, 287 U. S. 410, 53 S. Ct. 207, 77 L. Ed. 397, concerned a loss, and not an expense, is irrelevant, for the language of section 204 (a) of the Revenue Act of 1921, 42 Stat. 227, 231 ("resulting from the operation of any trade or business regularly carried on by the taxpayer"), is not in substance different from that of section 23 (a), except of course that a "loss" and an "expense" are different concepts. We agree with the board in thinking that decision in point if the facts are parallel; they seem to us parallel enough. All of Clark's time was given to the dredging company whose notes he had endorsed; but he was a partner and had "an active advisory interest" in three dredging firms "whose work was mostly in connection" with that of the main company; and he also had private investments. These outside activities did not color a transaction entered into to protect his shares; and the court refused to read his indorsements as part of a diffuse general business made up of diverse activities. It is quite true that here Bing continued to

give substantial time to his separate business unlike Clark, but that is of importance only if the new joint business can be regarded, at least as to him, as no more than a part of what he kept. There is indeed a sense in which one may think of oneself as being in a single business though one engages in many separate enterprises with many different persons. There might be expenses of such a business, just as there were in Foss v. Commissioner, supra (75 F. (2d) 326). The commission here was at least not wholly such an expense, though perhaps it was in part. It was partly such because the new company might improve the old business. But a large part of Bing's hope of profit lay elsewhere, in the operations of the new company itself. This could be realized only through the shares, which would reap the harvest of the loan, and the loan was the harvest of the commission. Thus it is most unreal to say that the commission was merely an expense of the old business. We cannot disregard the separation of the two, which indeed went so far that Bing while acting alone agreed to consider himself a competitor.

Order affirmed.