## HOLMES v. COMMISSIONER OF INTERNAL REVENUE.
### No. 9.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1938.

Randolph E. Paul and Charles B. Mc-Innis, both of New York City (Valentine B. Havens and Neilson Olcott, both of New York City, of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Petitioner entered in the business of buying and selling securities in 1925 and until the year 1930 bought and sold a considerable volume. Some of these were listed on the exchange and many were unlisted securities. The Board found he was a dealer in securities.

On January 3, 1927, he purchased 33,-834 shares of stock of the Domestic Electric Refrigerator Corp., a company which had been formed to take over some patents. Petitioner understood at the time of the purchase that a public offering of the stock would be made. Dissatisfied with the progress and operation of the company, but believing in its possibilities, he devoted considerable time and effort to correct manufacturing conditions and improve the organization. By April, 1927 he was the largest single stockholder and in May of the same year became president of the company. From January 3, 1927 to August 16, 1927 he purchased 374,736 shares of its stock at a price of $306,500. In July, 1927 he caused a public offering of 50,000 shares of this stock to be made, but

this failed. He then purchased the remainder of the stock, regarding this as a way to protect his stock purchases. He advanced funds to the company, guaranteed its accounts and extended his personal credit for its benefit, receiving in return its promissory notes. He reorganized its management, intending to put it in a financial position for a public stock offering. In 1928 petitioner, concluding that the Domestic Company would not be a profitable venture and that its operations should cease, took over all of its assets in exchange for its notes, liquidated it and transferred its assets to Holmes Product, Inc., newly-formed by petitioner, in exchange for 3,077 shares of the Holmes Co. stock. During this year he purchased 2,245 additional shares of the Holmes Co. for $224,500. Thereupon he and his mother were its only stockholders.

In the Summer of 1928, petitioner expected to make a public offering of the Holmes Co. stock but due to the condition of the company, the project was dropped. He advanced more funds to this company as required and received its stock for such advances. He also guaranteed the company's accounts, its manufacturing and material supply contracts and extended his personal credit for its benefit. In 1929 petitioner determined that the Holmes Co. could not be successful and he liquidated its affairs, sustaining a loss of $1,198,200 by reason of the worthlessness of his Holmes stock. He charged off a deduction for part of this loss in 1929 and the balance of $565,329.57 he sought to carry over for 1930 as a deduction, based upon the claim that the loss was attributable to the operation of a trade or business regularly carried on by him. This deduction was disallowed. The Board found that the taxpayer had failed to sustain the burden of establishing that the loss was attributable to regular activities as a buyer and seller of securities; that the loss more properly resulted from his transactions in connection with the control and management of the Domestic and the Holmes companies.

These purchases of the stock and liquidation of each company which gave rise to the loss which the petitioner sustained were properly held not to have been due to a loss sustained by petitioner while engaged in the business of buying and selling securities. In Dalton v. Bowers, 287 U.S.

404, 53 S.Ct. 205, 77 L.Ed. 389, the taxpayer was denied the right of set off, against gains, of a net loss attributable to his investment in a corporation which became insolvent. There the taxpayer contended that the corporation was an instrumentality of his business. The court said that in the management of the corporation he was not regularly engaged in the business of buying and selling corporate stocks.

"He organized the manufacturing corporation, and took over all its shares with the intention of selling them at a profit. He treated it as something apart from his ordinary affairs, accepted credits for salaries as an officer, claimed loss to himself because of loans to it which had become worthless, and caused it to make returns for taxation distinct from his own. Nothing indicates that he regarded the corporation as his agent with authority to contract or act in his behalf. Ownership of all the stock is not enough to show that creation and management of the corporation was a part of his ordinary business." 287 U.S. 404, at pages 409, 410, 53 S.Ct. 205, at page 206, 77 L.Ed. 389.

■ Whatever may be the business of the taxpayer, he must, in order to bring himself within the statute, § 117 of the Act of 1928, ch. 852, 45 Stat. 791, 26 U.S.C.A. § 117 note, relating to net loss deductions, show that the loss or expense was incurred in or attributable to the operation of the business regularly carried on by him. Van Wart v. Com'r, 295 U.S. 112, 55 S.Ct. 660, 79 L.Ed. 1336; Bing v. Helvering, 2 Cir., 76 F.2d 941; Monell v. Helvering, 2 Cir., 70 F.2d 631; Bedell v. Com'r., 2 Cir., 30 F. 2d 622, 624. To sustain that burden it is not sufficient to establish that his business was buying and selling securities. There is the further question whether the loss was attributable to the operation of that business. It was found by the Board that it was not; that finding is justified for it properly construed the evidence as showing that petitioner's acts in respect to these two corporations were clearly without the scope of activities of a dealer or trader in securities. Petitioner must be regarded as treating the Domestic and Holmes companies as a property holding apart from his security business. Dalton v. Bowers, supra. In the enterprise of reorganizing and rehabilitating the Domestic and Holmes companies, petitioner had be-

come interested in the manufacture of electric refrigerators as a stockholder and manager and was not entitled to pass forward a loss on his investment caused by a failure. The business was the corporation's and not the taxpayer's. Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397.

Reliance is placed on Washburn v. Com'r, 8 Cir., 51 F.2d 949, where the court held that the taxpayer was engaged in business and entitled to carry forward a net loss because his activities were not restricted to those of a passive investor but related also to the management of the companies in which he had such investments. The question there presented was whether the taxpayer was engaged in business at all within the meaning of the statute. Here the Board concluded that although the petitioner was engaged in business, still the loss in question was independent of and unrelated to that business. It pointed out that no shares of the Holmes Company were offered for sale and his interest in the affairs and success of the company was different in character from his conduct toward his market trading transactions. In Foss v. Com'r, 5 Cir., 75 F.2d 326, the taxpayer owned a majority stock of one company and was heavily interested in the management of another in the same line of business. The minority stockholders sued to enjoin the taxpayer and his associates from doing certain illegal acts. He paid counsel compensation for conducting this litigation and tried to deduct these counsel fees from gross income. This was refused as not an ordinary and necessary expense paid in carrying on a trade or business. The court found that the taxpayer was a man of property and affairs and devoted his time to active management and participation in the management, maintained an office and spent considerable amount of time carrying on a business within the meaning of the statute. The litigation was said to be an outgrowth of his business activities and he was brought into the suit not because of his stock ownership in one company, but because of his stock ownership and business activity in both. It was his business activities in those connections which exposed him to the suit. The deduction was allowed. But in the instant case, while the petitioner was engaged in the security business, still his activities in

connection with his investments which gave rise to this loss were different from and independent of his regular business so that the loss cannot be said to have resulted therefrom. Street v. Com'r, 26 B.T.A. 17, affirmed per curiam, 2 Cir., 67 F.2d 1012; Keusch v. Com'r, 3 Cir., 60 F.2d 481.

Moreover, the loss here sought to be deducted did not occur upon the original purchase of the stock in the Domestic company but when the Holmes company was wound up. The petitioner must bear the burden of showing that the amount claimed actually constitutes a loss under the statute. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348. Even if the petitioner was motivated by the desire to protect his original investment, it thus appears that the eventual loss was not attributable to the business of buying and selling securities for that business is to be distinguished from the effort made to succeed with his refrigeration business. Seeley v. Helvering, 2 Cir., 77 F.2d 323.

The statute requires that the loss be attributable to the operation of a business regularly carried on. We cannot disturb the finding of the Board that the loss was not attributable to the operation of the business of buying and selling securities.

Decision affirmed.