**BALTIMORE AIRCOIL COMPANY, Inc.**

v.

**UNITED STATES of America.**

**Civ. A. No. 70–340–N.**

United States District Court,
D. Maryland.

Aug. 2, 1971.

Howard H. Conaway, Shale D. Stiller, and Frank, Bernstein, Conaway & Goldman, Baltimore, Md.., for plaintiff.

George Beall, U. S. Atty., John G. Sakellaris, Asst. U. S. Atty., Baltimore, Md., Robert J. Hipple and John Flanagan, Attys., Department of Justice, Washington, D. C., for defendant.

NORTHROP, Chief Judge.

This is an action for the recovery of Internal Revenue taxes pursuant to 28 U.S.C. § 1346(a) (1). This action has been considerably expedited by the stipulation entered into by the parties. The operative facts are as follows.

The plaintiff, Baltimore Aircoil Company, Inc. (Aircoil), is a Delaware corporation with its principal place of business in Howard County, Maryland; the defendant is the United States of America.

Plaintiff filed a consolidated federal corporate income tax return for 1965 for itself and a wholly-owned subsidiary, Baltimore Aircoil Company of California, Inc. (California), on July 16, 1966, pursuant to a timely application for automatic extension to file the return, paying taxes on account of the consolidated return in the amount of $508,454.13.

On or about August 8, 1969, a timely assessment of additional taxes in the amount of $6,996.59, together with interest of $1,401.61, for a total of $8,-398.20, was made by the District Director of Internal Revenue, and the plaintiff paid this sum in full on August 14, 1969. The additional assessment resulted from the disallowance of certain deductions claimed by the taxpayer on the consolidated tax return.

On November 3, 1969, plaintiff filed a claim for refund of taxes and assessed interest in the amount of $8,398.20 on the grounds that certain expenses incurred by the plaintiff in connection with the opening of the California plant, including groundbreaking ceremony costs, trainee salaries, travel expenses, moving expenses for employees transferred to California, and minor administrative expenses such as printing costs and telephone expenses, were ordinary and necessary business expenses deductible by it under either Section 162 or 212 of the Internal Revenue Code, or were amortizable expenses. The plaintiff's claim for refund was formally disallowed by the District Director by certified mail on March 5, 1970. The instant suit was instituted on March 23, 1970, on the same grounds as those raised in the claim for refund.

Aircoil was incorporated in Maryland on March 28, 1947, and was registered to do business in California on May 22, 1963. Aircoil is a manufacturer of equipment for control of thermal pollution of water and for water conservation, including evaporative condensers, cooling towers and closed circuit industrial coolers. This has been the nature of business since incorporation to the present but evaporative condensers were predominant in 1947 and cooling towers presently contribute the largest volume of business. Since approximately 1951, Aircoil had shipped its products to California and other western states from Aircoil's Baltimore plant, and had employed many sales representatives in California and the other western states. Aircoil's sales in California and Arizona alone were as follows from 1961–1965:

| 1961 | $   804,000 |
| 1962 | 816,000 |
| 1963 | 826,000 |
| 1964 | 1,095,000 |
| 1965 | 1,232,000 |

In 1963, a warehousing operation was established in California but was aban-

doned within a few months for technical and economic reasons.

On June 4, 1965, it was reported to Aircoil's board of directors that the officers were considering either the construction or leasing of a small plant in California. This matter was presented to the board at a special meeting on July 15, 1965, at which the following minutes and resolutions were adopted:

The Chairman then stated that, as previously reported to the Board, the Management for some time has been considering the advisability of constructing a manufacturing and assembly plant in California; that the Company's sales in the West Coast area have been approximately 18% of the Company's total sales but that the Company is at a competitive disadvantage in that area in that freight charges (which are paid by the purchaser and thus increase the cost to him) amount to approximately 16% of the sales price of the equipment sold. He said that a survey of the area had been made and it appeared that the Company could purchase land and construct and equip a plant of the size now needed by it at a cost of approximately $350,000. The matter was fully discussed and considered by the Board and upon motion duly made, seconded and unanimously carried, it was

RESOLVED, that the proper officers of this Company be and they are hereby authorized to cause a wholly owned subsidiary of this Company to be organized under the laws of the State of California, and

FURTHER RESOLVED, that the proper officers of this Company be and they are hereby authorized to make such investment of the funds of this Company in said subsidiary by way of purchase of stock, the extension of credit and the making of loans as they shall deem advisable, and

FURTHER RESOLVED, that the proper officers of this Company be and they are hereby authorized to cause the said subsidiary to purchase such land in California and to construct and equip such manufacturing and assembly plant there as they may deem advisable; and

FURTHER RESOLVED, that the proper officers of this Company be and they are hereby authorized on behalf of this Company to guarantee payment of any and all liabilities, debts or claims of or against said subsidiary corporation and to indemnify and save harmless any person, firm or corporation from and against any loss, damage or expense arising out of any liabilities, debts or claims of or against said subsidiary corporation; and

FURTHER RESOLVED, that the proper officers of this Company be and they are hereby authorized to execute such guarantees, agreements, bonds, postponements of claims or other instruments as may be necessary or desirable to effectuate the intent of this resolution.

In addition to the reasons stated in the above minutes, other factors contributing to the decision to form California included longer delivery times from the Baltimore plant, excessive freight damage claims, both points of irritation to customers, and greater union activity in California which could have affected Aircoil's non-union status.

Pursuant to these resolutions, California was organized as a wholly-owned subsidiary of Aircoil on August 10, 1965, to take over the production and distribution in California and other western states of the same products which Aircoil previously had produced and distributed from its plant in Baltimore. The officers and directors of California were, with minor exceptions, the same as the officers and directors of Aircoil.

During 1965, after the incorporation of California, approximately fifteen acres of land were purchased near Madera, California, for the purpose of constructing a plant there, a construction contract was signed, and orders for manufacturing machinery and equipment were placed. Although formed in 1965, California had no income, no cash and no bank accounts during that year

and all its expenses, including the purchase price of the land, were paid by Aircoil in 1965.

Aircoil paid the following expenses in 1965, which are the subject of the present suit:

| Date | Expense | Payee | Amount |
|---|---|---|---|
| July | Travel | Fred Long | $ 158.80 |
| August | Travel | American Express | 131.85 |
| August | Travel | Hertz | 117.86 |
| August | Sign for California Plant | Burnett Signs | 40.00 |
| August | Travel | John Engalitcheff and J. O. Honeywell | 724.17 |
| September | Travel | American Express | 196.29 |
| September | Travel | American Airlines | 1,296.68 |
| September | Travel | Avis | 93.26 |
| September | Stationery for California Plant | ———— | 47.33 |
| September | Purchase Orders for California Plant | Regent Forms | 20.38 |
| October | Forms for California Plant | ———— | 21.47 |
| October | Travel | Hertz | 87.56 |
| October | Announcements | ———— | 41.00 |
| October | Miscellaneous | Petty cash | 3.81 |
| October | Travel | John Engalitcheff | 350.78 |
| November | Travel | Tradewinds Motel | 214.99 |
| November | News Film of Groundbreaking | KJED–TV | 20.00 |
| November | Groundbreaking Photographs | ———— | 165.36 |
| November | Catering for Groundbreaking | Cedar Lanes Bowl | 436.60 |
| November | Telephone | Pacific Telephone | 55.69 |
| November | Travel | ———— | 785.41 |
| November | Travel | American Airlines | 2,297.80 |
| November | Travel | Hertz | 243.97 |
| November | Travel | Humble Oil Co. | 12.63 |
| November | California checks | I.B.M. | 46.35 |
| November | ———— | Petty cash | 1.00 |
| November | Architect— California Plant | Edward Rogers | 250.00 |
| December | Employee Relocation Expense | David Boyd | 570.00 |
| December | Employee Relocation Expense | J. O. Honeywell | 500.00 |
| December | Copies of Ground-breaking photographs | ———— | 91.00 |
| December | Compensation October to December | Honeywell & Boyd | 5,075.00 |
| December | Travel | Hertz | 54.99 |
| December | Stamp—California | Baltimore Stationers | 5.15 |
| December | Miscellaneous | L. A. Benson | 10.92 |
| December | Checks—California | I.B.M. | 118.67 |
| December | Checks—California | I.B.M. | 29.58 |
| December | Cards—California | Moran Printing | 20.63 |
| December | Steel Bars | Seaboard Steel | 160.87 |
| December | Letterheads & Envelopes | ———— | 49.19 |
| December | Travel | American Airlines | 768.81 |
| | | | $15,316.25 |
| | | Less reimbursed personal expenses | 739.98 |
| | | | $14,576.27 |

Summary:

| | |
|---|---|
| Groundbreaking ceremony for California Plant, October 17, 1965 | $ 4,908.74 |
| Salaries of California trainees | 5,075.00 |
| Moving expenses of employees to California | 1,893.80 |
| Travel expenses of employees to California | 2,066.49 |
| Miscellaneous, advertising and promotion | 632.24 |
| | $14,576.27 |

John Engalitcheff was in 1965 the president of Aircoil. The compensation of $5,075.00 paid to Honeywell and Boyd was paid for services performed on behalf of California and for services to Aircoil in training their replacements at Aircoil. Approximately fifty percent of the total was paid for the services to Aircoil and approximately fifty percent for the services performed for California.

Plaintiff rests its claim for refund on the theory that the various expenses were ordinary and necessary business expenses deductible by Aircoil under section 162 of the Internal Revenue Code.

■ Income tax deductions depend upon legislative grace, and the taxpayer must be able to point to an applicable statute and show that he comes within its terms. Interstate Transit Lines v. Commissioner of Internal Revenue, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943); Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934); Woolford Realty Co. v. Rose, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128 (1932); Planters' Cotton Oil Co. v. Hopkins, 286 U.S. 332, 52 S.Ct. 509, 76 L.Ed. 1135 (1932). Plaintiff carries the burden of showing the right to an income deduction. Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932); Strasburger v. Commissioner of Internal Revenue, 327 F.2d 236 (6th Cir. 1964). In this claim for refund, plaintiff relies upon section 162(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 162(a) (1955), which provides:

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.

To qualify under this section, expenses must be (1) paid or incurred in carrying on a trade or business, (2) ordinary and necessary, and (3) paid or incurred within the taxable year. Richmond Television Corp. v. United States, 345 F.2d 901 (4th Cir. 1965); Hill v.

Commissioner of Internal Revenue, 181 F.2d 906, 908 (4th Cir. 1950). Plaintiff does not make the claim that it is engaged in the trade or business of forming and promoting subsidiary corporations. *Cf.* Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963), reh'g denied, 374 U.S. 858, 83 S.Ct. 1863, 10 L.Ed.2d 1082 (1963). The government does not contest the fact that the expenses were paid or incurred during the taxable year, nor that they were ordinary and necessary business expenses. Defendant does urge, however, that the trade or business of California is not the trade or business of Aircoil since they are separate and distinct entities, each engaged in separate, though similar, trades or businesses. The government argues that the payments by Aircoil are capital contributions to California which must await disposition of the California stock. *Cf.* Bing v. Helvering, 76 F.2d 941 (2d Cir. 1935); Ward v. Commissioner, 20 T.C. 332 (1953), aff'd 224 F.2d 547 (9th Cir. 1955).

It is undeniable that Aircoil and California were separate entities and that the expenses at issue in this case were paid by Aircoil, on behalf of California. It is plaintiff's contention that, notwithstanding the above, it is entitled to deduction of these expenses under section 162.

■ Defendant relies on the well-established principle that expenses incurred for the benefit of another taxpayer cannot be deducted under section 162. *See* Moline Properties, Inc. v. Commissioner of Internal Revenue, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943); Interstate Transit Lines v. Commissioner of Internal Revenue, *supra;* Deputy v. DuPont, *supra;* Young & Rubicam, Inc. v. United States, 410 F.2d 1233, 187 Ct. Cl. 635 (1969). The Supreme Court has stated that:

The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to

comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. New Colonial Co. v. Helvering, 292 U.S. 435, 442, [54 S.Ct. 788, 78 L.Ed. 1348;] Deputy v. DuPont, 308 U.S. 488, 494, [60 S.Ct. 363, 84 L.Ed. 416.] In Burnet v. Commonwealth Improvement Co., 287 U.S. 415, [53 S.Ct. 198, 77 L.Ed. 399,] this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptance of the tax disadvantages.

Moline Properties, Inc. v. Commissioner of Internal Revenue, *supra*, 319 U.S. 438–439, 63 S.Ct. 1134 (footnotes omitted).

Application of this principle would result in disallowance of the claimed refund, for it would mean that a parent corporation could not deduct, as an expense, a payment made by it for a subsidiary. Interstate Transit Lines v. Commissioner of Internal Revenue, *supra*. *Cf.* Deputy v. DuPont, *supra*.

Numerous courts have, however, carved exceptions to this general rule where they felt compelled by the "peculiar circumstances" to do so. *See* Gulf Oil Corp. v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133 (1918); Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142 (1918); North Jersey Title

Ins. Co. v. Commissioner of Internal Revenue, 84 F.2d 898 (3rd Cir. 1936).[1] In Interstate Transit Lines v. Commissioner of Internal Revenue, *supra*, a parent corporation, engaged in interstate bus transportation, formed a wholly-owned subsidiary to do business in California because the parent's foreign incorporation barred it under California law from operating directly in California. In 1936 the parent became obligated for its subsidiary's operating deficit and sought to deduct the amount of this obligation. The Supreme Court affirmed the denial of the claimed deduction, but stated: "This is not the case of a mere branch or division conducted solely for convenience's sake under a separate corporate form." 319 U.S. at 593, 63 S.Ct. at 1281. This court is of the opinion that in this case California was a "mere branch or division" and that this is a case "where equity and reality require that the separate corporate identities be ignored." *Id. Cf.* Young & Rubicam, Inc. v. United States, *supra*, and cases cited therein at 410 F.2d 1242.

■ The Supreme Court has recognized that where a case presents peculiar circumstances, it is proper to disregard form and look to the substance of the transaction. *See* Gulf Oil Corp. v. Lewellyn, *supra;* Southern Pacific Co. v. Lowe, *supra*. *See also* Continental Oil Co. v. Jones, 113 F.2d 557 (10 Cir. 1940); Munson S. S. Line v. Commissioner of Internal Revenue, 77 F.2d 849 (2 Cir. 1935); North Jersey Title Ins. Co. v. Commissioner of Internal Revenue, *supra*.

The government argues that the significant factor in this case is that Aircoil formed a wholly-owned subsidiary to own and operate its California plant.

---

1. "In Southern Pacific Co. v. Lowe [*supra*], and Gulf Oil Corp. v. Lewellyn [*supra*], corporate lines between parent and subsidiary corporations were disregarded to arrive at just taxing basis, although the holdings in these cases have been modified by the language of Burnet v. Commonwealth Improvement Co., 287 U.S. 415 [53 S.Ct. 198, 77 L.Ed. 399] * * * as follows: 'Southern Pacific

* * * and Gulf Oil * * * cannot be regarded as laying down any general rule authorizing disregard of corporate entity in respect of taxation. These cases presented peculiar situations, and were determined upon consideration of them.'" North Jersey Title Ins. Co. v. Commissioner of Internal Revenue, *supra*, at 901.

It concedes that these expenses—which have not been challenged as "ordinary and necessary" expenses—would have been deductible had Aircoil merely opened a plant in California instead of establishing a subsidiary corporation. Plaintiff argues that, carried to the extreme, this position of the government would lead to absurd results:

> If the Government's theory is correct, it would also follow that a substantial amount of other expenses would be non-deductible. For example, the 1965 salaries of all of Baltimore Aircoil's executives would have to be apportioned between the time they spent on Baltimore activities and California activities. The President of Baltimore Aircoil and all the other people who were intimately involved in the plans for building the California plant would be involved in planning for this so-called "new business."

(Plaintiff's brief at 5.)

This court cannot disregard the fact that in cases of this nature, it is the government which makes the argument, and properly so, that substance should prevail over form in considerations of taxing law. In this case, however, the government argues that plaintiff must abide by the form it chose—even though it amounts to an exaltation of form over substance. The principle that substance and not form should control in the application of income tax law is fundamental. North Jersey Title Ins. Co. v. Commissioner of Internal Revenue, *supra*. In this case, California, during the taxable year, had no active operations, had no cash, and no bank accounts. California and Aircoil filed, for the year in question, a consolidated tax return.

> The present case presents just such "peculiar circumstances." Here no question is raised between the identity of a controlling stockholder with his corporation. On the other hand, there is amply demonstrated a subsidiary corporation the only purpose of which was to act as agent for and on behalf of its parent, and while in form there

are admittedly two separate entities, in substance there is but one enterprise.

North Jersey Title Ins. Co. v. Commissioner of Internal Revenue, *supra*, 84 F.2d at 901. *See also* New Colonial Ice Co. v. Helvering, *supra*, 292 U.S. at 441, 54 S.Ct. at 791.

This court concludes that California, the subsidiary, was in substance merely a branch or division of Aircoil, the parent, and that therefore plaintiff is entitled to the relief it requests.