SPECIALTY RESTAURANTS CORPORATION AND SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Specialty Restaurants Corp. v. Commissioner
Docket No. 6082-89.
United States Tax Court
T.C. Memo 1992-221; 1992 Tax Ct. Memo LEXIS 238; 63 T.C.M. (CCH) 2759; April 14, 1992, Filed *238 Decision will be entered for respondent. Joseph H. Lazara and Michael S. Goergen, for petitioner. Jeri L. Gartside, for respondent. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in petitioner's Federal income tax of $ 156,043, $ 191,868 and $ 171,222 in 1979, 1982, and 1983, respectively. The primary issue for decision is whether petitioner may deduct certain preopening expenses of its wholly owned subsidiaries as ordinary and necessary business expenses under section 162. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts, together with the attached exhibits, are incorporated herein by this reference. Specialty Restaurants Corporation (hereinafter petitioner or Specialty) was incorporated on April 24, *239 1968, under the laws of the State of California and maintains its principal place of business in Anaheim, California. For the years at issue, petitioner and its wholly owned subsidiaries filed consolidated Federal income tax returns. Petitioner operated some of its restaurants as wholly owned subsidiaries for distinct reasons, including insulation from creditors, lease requirements, and compliance with State liquor law regulations. During the tax years ended June 1982 and 1983, respectively, there were 111 and 107 subsidiaries within the consolidated group. Of this number, approximately 55 of the subsidiaries were operated as restaurants. A subsidiary was generally incorporated prior to a restaurant's existence. The corporate names of the subsidiaries which ultimately operated the restaurants opened during the years in issue are: Corporate Name
Restaurant Name
Date Opened
94th Aero Squadron
101st Airborne
February 1982
of Nashville, Inc.
57th Fighter Group
57th Fighter Group
February 1982
of Atlanta, Inc.
Jacksonville
Crawdaddy's
March 1983
Crawdaddy Corp.
94th Aero Squadron
94th Aero Squadron
March 1982
of Jacksonville, Inc.
Buffalo Waterfront
Crawdaddy's
June 1982
Restaurant Corp.
56th Fighter Group
56th Fighter Group
April 1983
of Long Island, Inc.
Pinellas Farmhouse,
Las Fontanas
December 1982
Inc.
Chili Pepper of
Rusty Pelican
December 1983
Rocky Point, Inc.
*240 Petitioner paid all the costs and expenses, both capital and ordinary, [2] incurred prior to a subsidiary's opening. The costs classified by petitioner as ordinary in nature included rents, interest if there was financing on the entity, salary and wages for construction personnel, travel to the site during the course of construction, and training for new employees to be used at the new location. These expenses were monitored by Specialty's personnel in the construction, finance, regional accounting, real estate, and purchasing departments. The capital asset purchases, as classified by petitioner, were also paid for by petitioner; however, these purchases were typically transferred onto the books of the subsidiary without reimbursement. These costs included new buildings, improvements, and equipment. Petitioner received a management fee, based upon the subsidiaries' percentage of gross sales, *241 for providing services such as accounting, financing, purchasing, management, advertising, training, and consulting. The bulk of money from sales of the subsidiaries, divisions, and cost centers was funneled into a "concentrator" account where the funds were disbursed by petitioner on behalf of an entity (subsidiary or division) for all its expenses. (Money was deposited by a subsidiary into a depository account at the Bank of America. That money was automatically commingled with the funds of other subsidiaries into the concentrator accounts.) Typically, the allocation was based on the sales volume of the respective entities. Notwithstanding, each subsidiary maintained an account at a local bank, in its own name, for petty cash. The directors of the subsidiaries were all officers and/or directors of Specialty. During the years in issue, the directors of the subsidiaries were: David Tallichet, chairman and president of Specialty; Cecelia Tallichet, director of Specialty; and Jacqueline Withbeck, retired secretary of Specialty. On its income tax return for tax years ended June 30, 1982 and 1983, petitioner deducted, under section 162, expenses incurred in connection with the *242 creation of the above-listed subsidiaries. In her notice of deficiency, respondent disallowed these expenses, stating that they represented preopening expenses to be capitalized under section 263 or amortized under section 195. She further determined that the expenses were those of the respective subsidiaries, separate and distinct legal entities, not petitioner. OPINION Petitioner maintains that it has continuously been in the business of opening and managing theme restaurants since its incorporation in 1968. It argues that the expenses incurred herein represent the expansion of an existing business to a new geographical location, not a new business venture. Thus petitioner asserts that the expenses in question were those of Specialty, not the subsidiaries, and it is thus entitled to the deductions. Respondent maintains that here it is inappropriate to disregard corporate lines, and further that until a business has begun to function as a going concern and has performed activities for which it was organized, the trade or business requirement does not allow a taxpayer deductions for preopening expenses. Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), *243 vacated and remanded on other issues 382 U.S. 68 (1965). Respondent maintains that the subsidiaries' costs are controlled by sections 263 or 195.[3]Section 263 provides in part that no deduction shall be allowed for any amount paid for new buildings or for permanent improvements or betterments made to increase the value of property. Although this section is directed against deductions as to new buildings, the Supreme Court in Commissioner v. Idaho Power Co., 418 U.S. 1, 16 (1974), stated that the section's purpose is to reflect the basic principle that a capital expenditure may not be deducted.
Section 195 provides, in pertinent part, that startup expenses may be treated as deferred expenses and deducted ratably for a period of not less than 5 years beginning with the month the business began, providing the taxpayer elected at the time the first return was due. This Code section was effective for amounts paid or incurred after July *244 1980. [4] After the effective date of section 195, petitioner failed to make the election to amortize; hence, section 195 is inapplicable. Income tax deductions depend upon legislative grace, Indopco, Inc. v. Commissioner,     U.S.    , 112 S. Ct. 1039 (1992), and the taxpayer must be able to point to an applicable statute to show that he comes within its terms. Interstate Transit Lines v. Commissioner, 319 U.S. 590 (1943). Petitioner has the burden of proving the right to an income tax deduction. Rule 142; Indopco, Inc. v. Commissioner, supra *245 . Deductions are exceptions to the norm of capitalization. Indopco, Inc. v. Commissioner, supra.
Petitioner relies upon section 162(a) which states that, in general, "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business". Petitioner contends it was engaged in an established, functioning business at the time it incurred the expenses -- the business of opening and managing theme restaurants in both subsidiary and divisional form. There were no separate lines of business and no operations that could be distinguished from its existing methods and facilities. Petitioner also provided accounting, finance, purchasing, management, advertising, training, and consulting services for its operating subsidiaries which are totally dependent on petitioner for these services. The expenses at issue were for carrying on that business, i.e., rents, interest, salaries, travel to and from the site, and training of new employees. No deduction was taken for construction, improvements, or equipment. Although respondent did not contest the fact that petitioner opened, operated, and owned the *246 restaurants in question, she argues the expenses were not ordinary and necessary nor incurred by petitioner. She contends they are preopening expenses of the subsidiaries for the purpose of establishing their respective restaurants, and thus represent capital contributions to the subsidiaries by petitioner. We agree. It is well established that expenses incurred for the benefit of another taxpayer are not deductible under section 162. See Interstate Transit Lines v. Commissioner, 319 U.S. 590 (1943); Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943); Young & Rubicam, Inc. v. United States, 410 F.2d 1233 (1969). Specialty analogizes itself to the taxpayers in Baltimore Aircoil Co. v. United States, 333 F. Supp. 705 (D. Md. 1971). In that case, Aircoil, the parent corporation, formed California as a wholly owned subsidiary to take over the production and distribution in the western States. Aircoil paid all the expenses for the subsidiary in the year of incorporation. At that time, California had no income, no cash, and no bank accounts. The District Court determined that California was *247 a "mere branch or division" of Aircoil in substance (although legally two separate entities), and both "equity and reality require that the separate corporate identities be ignored". Baltimore Aircoil Co., Inc. v. United States, supra at 710. However, in March 1972, upon joint motion of the parties, Baltimore Aircoil was remanded by the Fourth Circuit and the judgment vacated. Hence, Baltimore Aircoil has no precedential value. Baltimore Aircoil Co. v. United States, Civil Action No. 70-340 (4th Cir., Mar. 14, 1972); see also United States v. Manor Care, Inc., 490 F. Supp. 355 (D. Md. 1980). In this case, the facts are clear that, on one hand, Specialty and its subsidiaries are separate legal entities and the subsidiaries were formed for valid business reasons. On the other hand, the board of directors for the subsidiaries are all officers and former officers of Specialty; Specialty and its subsidiaries are engaged in the same business; and the expenses at issue were paid by Specialty on behalf of its subsidiaries. However, The mere fact that a parent corporation owns all of the stock in a subsidiary, standing alone *248 and without more, is not enough to warrant the disregard of their separate juridical entities. [Continental Oil Co. v. Jones, 113 F.2d 557, 562 (10th Cir. 1940); citations omitted.]
Furthermore, creation of the subsidiaries provided distinct advantages, including limited liability and compliance with State liquor laws. The choice of the advantages of incorporation to do business requires the acceptance of tax disadvantages. Commissioner v. National Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 142 (1974); Moline Properties, Inc. v. Commissioner, spra. Consequently, the expenses in question were not properly deductible by the parent corporation, but represented a contribution to the capital of the subsidiaries. Accordingly, Specialty and its subsidiaries must be taxed as separate entities, and the expenses in question can only be deducted by the subsidiaries, if at all. The expenses at issue included rents, interest, salary and wages for construction personnel, travel to the construction site, and training for new employees. "To qualify for deduction under section 162(a), 'an item must (1) be "paid or incurred during the *249 taxable year," (2) be for "carrying on a trade or business," (3) be an "expense," (4) be a "necessary" expense, and (5) be an "ordinary" expense.'" Indopco, Inc. v. Commissioner,     U.S. at    , 112 S. Ct. at 1043-1044 (quoting Commissioner v. Lincoln Savings & Loan Association, 403 U.S. 345, 352 (1971)). The Supreme Court has considered the necessary and ordinary requirements on numerous occasions. See id.; Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Deputy v. Du Pont, 308 U.S. 488, 495 (1940); Welch v. Helvering, 290 U.S. 111, 114 (1933). "The term 'necessary' imposes 'only the minimal requirement that the expense be "appropriate and helpful" for the development of the [taxpayer's] business.'" Indopco v. Commissioner,     U.S. at    , 112 S. Ct. at 1044 (quoting Commissioner v. Tellier, supra at 689). "To qualify as 'ordinary,' the expense must relate to a transaction 'of common or frequent occurrence in the type of business involved'". Indopco v. Commissioner,     U.S. at    , 112 S. Ct. at 1044 (quoting Deputy v. Du Pont, supra at *250 495). The Supreme Court has recognized that the decisive distinctions between current deductible expenses and capital expenditures (expenditures under section 263 that, if deductible at all, must be amortized over the useful life of the asset), "'are those of degree and not of kind'", and that "because each case 'turns on its special facts,' the cases sometimes appear difficult to harmonize." Indopco v. Commissioner,     U.S. at    , 112 S. Ct. at 1044 (quoting Welch v. Helvering, supra at 116). The primary effect of characterizing a payment as either a business expense or a capital expenditure concerns the timing of the taxpayer's cost recovery * * *. * * * the Code endeavors to match expenses with the revenues of the taxable period to which they are properly attributable, thereby resulting in a more accurate calculation of net income for tax purposes. [Indopco, Inc. v. Commissioner,     U.S. at    , 112 S. Ct. at 1042-1043.]
In Richmond Television Corp. v. United States, 345 F.2d 901 (4th Cir. 1965), the taxpayer was a newly formed corporation organized for the purpose of operating a television station. Richmond *251 submitted its application for license shortly after its incorporation. Larus Brothers and Company (Larus), Richmond's competitor for the license, was a radio station that had applied for the license several years prior to Richmond and had spent significant sums of money in training personnel in television operations in anticipation of the license grant. Prior to the issuance of the license, Richmond and Larus entered into an agreement whereby Larus withdrew its application in exchange for ownership of Richmond. Richmond, in turn, agreed to reimburse Larus for all costs incurred in pursuing the license both prior to and after the agreement, but before the license grant. Richmond claimed a section 162 deduction for these reimbursements. Respondent disallowed the deductions, the District Court found for the taxpayer, and the Fourth Circuit Court of Appeals reversed. The Court of Appeals stated the trade or business requirement denies a taxpayer deductions for preopening expenses until actual business operations have commenced and the taxpayer performs those activities for which it was created. Id. at 907. See also Madison Gas & Electric Co. v. Commissioner, 72 T.C. 521 (1979), *252 affd. 633 F.2d 512 (7th Cir. 1980). In this case, the nine subsidiaries involved were formed and incorporated during the taxable years in question, 1984 and 1985. Their function, like the parent company, was to establish, open, and operate theme restaurants. Yet, the respective restaurants of the subsidiaries (see supra p. 3), were not opened for business during the years at issue. Thus, applying the rationale set forth in Richmond, the expenses in question were not properly deductible under section 162 until actual business operations of the restaurants had commenced. Accordingly, we conclude that the deficiencies as set forth in respondent's notice of deficiency, disallowing current deductions for Specialty and its subsidiaries, are correct. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. These designations are used by petitioner. We use them here for purposes of discussion only, not in their legal sense.↩
3. See also sec. 248, not cited by respondent.↩
4. Prior to the enactment of sec. 195, business start-up or investigatory expenses were not deductible as ordinary and necessary business expenses because the taxpayer had no concurrently operated trade or business to which the expenses might be attributable. See e.g., Goodwin v. Commissioner, 75 T.C. 424, 433-434 n.8 (1980), affd. without published opinion 691 F.2d 490↩ (3d Cir. 1981).