Fairbanks J. **DABNEY**

v.

W. K. **CUNNINGHAM, Jr., Director,**
**Division of Corrections.**

Civ. A. No. 60–70–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 4, 1970.

7. 308 F.Supp. at 977.

Fairbanks J. Dabney, pro se.

Reno S. Harp, III, Asst. Atty. Gen. of Va., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Fairbanks J. Dabney, a Virginia state prisoner, proceeding *pro se,* filed a sworn complaint in this Court on February 11, 1970, asking this Court to order his release from punitive segregation, where he has been confined, save for a short interval, since July 19, 1968. Dabney states that he is guilty of no breach of prison regulations and has been unable to determine why he is being punished.

According to the complaint, Dabney took no active part in the prison work stoppage of July 16, 1968, although he was present. Nevertheless, from July 19, 1968, until May 25, 1969, he was kept in a "padlocked" cell. On the latter date he was sent from the penitentiary to a road camp, where he arrived in physically weak condition. After several weeks at the field unit, Dabney asked to be assigned to lighter work in the kitchen. Mr. Paul Mayo, the Superintendent, allegedly demurred, saying he had no authority to place Dabney in a position reserved for "trusties." Mayo allegedly said that Dabney would be permitted to talk with one Major Jefferson on June 20, 1969, he being the person authorized to make such transfers, and that Mayo himself would endorse the request.

On June 20, however, Dabney swears that he had no meeting but instead was returned to the penitentiary and placed again in a "padlocked" cell.

On September 22, 1969, the penitentiary superintendent and two other prison officials spoke with Dabney, he states, at which time he again expressed his willingness to undertake work, preferably in the prison plumbing shop. The following day Dabney was moved to the maximum security facility, C-Building.

In his current status Dabney has no access to recreational facilities, religious services, educational facilities, and is segregated from the rest of the prison population. He may not receive packages and, allegedly, his visiting privileges are somewhat curtailed. Even if otherwise eligible for parole, he claims, he would not receive consideration while confined in C-Building. See the discussion of the regulations in effect in 1966 in Howard v. Smyth, 365 F.2d 428 (4th Cir. 1966); and in Landman v. Peyton, 370 F.2d 135 (4th Cir. 1966).

The defendant answered and moved to dismiss for failure to state a claim upon which relief can be granted. He stated that Dabney was "padlocked" from July 19, 1968, until May 21, 1969; that the Superintendent of the field unit had reported on June 17, 1969, that he found Dabney "unsuitable" for the camp, following which he was re-transferred; and that after the September, 1969, interview "it was the opinion" that he should not be transferred.

■ Annexed to the answer were two letters written by prison officials which tend to amplify the defendant's allegations. The motion to dismiss, consequently, acquires the character of a motion for summary judgment, Fed.Rules Civ.Proc., Rule 12(b), 28 U.S.C. McDonough v. Director of Patuxent, 429 F.2d 1189 (4th Cir. 1970), 6 Moore's Federal Practice, ¶ 56.11 [1.–1], at 2144 (2d ed. 1966). In this instance it is not clear from the certificate of service whether the defendant served copies of these exhibits on the plaintiff. Affidavits must be served, under Rule 6(d), Cf. Close v. United States, No. 14,527, mem. decis. (4th Cir., Aug. 27, 1970); and it is at least the preferable practice, if not requisite, that exhibits intended to support factually the contention that administrators' acts are not arbitrary be served upon the opposing party so that he have the opportunity to rebut the contents. See Gaudet v. Cunningham, No. 14,380, mem. decis. (4th Cir., May 8, 1970). In view of the disposition of this matter, it is not necessary to pursue the inquiry here.

One letter is an unsworn document, prepared after suit was filed, by the penitentiary superintendent. It states only that Dabney was returned on Mayo's finding of unsuitability and that for some reason he was placed on "padlock" by order of a Mr. Doughtie. After the September, 1969, interview, Dabney was kept in segregation because "we were not favorably impressed with Dabney's attitude," together with the fact that he had only recently returned from a field unit.

■ The second letter, that of June 17, 1969, is from Mr. Mayo, of Field Unit No. 3, to Mr. N. G. Doughtie of the Division of Corrections. A contemporaneous document such as this is entitled to much greater weight than one prepared after the fact in determining the arbitrariness of institutional action. Roth v. Brown, No. 14,060, mem. decis. (4th Cir. Jan. 6, 1970); Lewis v. Brown, No. 12,997, mem. decis. (4th Cir., Aug. 4, 1969).

In its entirety, the text of the letter is as follows:

Dear Sir:

On the morning of the above date, the above referenced inmate came into my office and asked me to give him a Bible or some of the books which he had been studying and place him in solitary. I asked him why, and he stated he just couldn't make it out there on that road, that he felt tempted at times to escape or at least to attempt escape and that he did not want any more time. He stated he would like to learn a trade and he didn't feel that anything he was doing would help him. I asked him if he was trying to tell me that he wanted to be returned to the Penitentiary and he said, "Well, something like that". He still seems to feel that the work is degrading and that he should be doing something suitable to his talents.

With this subject's attitude, I do not personally feel that he is suitable here.

Mr. Mayo determined, according to the letter, that Dabney should be returned to the penitentiary. He did not determine that he had been guilty of any infraction of prison rules, posed a threat to himself or to others, or could not safely be kept in custody among the penitentiary population.

Appended to the bottom of the letter from Mayo is a handwritten notation: "To be returned this date and on lock up. 6/20/69. N.G.D." No factual basis for this last determination is given. In the face of the decision a few months before to place the plaintiff on a road camp, it begs for explanation.

Although substantial authority exists for the granting of summary judgment for a non-moving party, see 6 Moore's Federal Practice, ¶ 56.12, at 2241–46 (2d ed. 1966), this Court determined that in an area such as this, where federal courts exercise their jurisdiction only when administrators' actions cannot be justified by reasonable needs of security and discipline, it ought not to act unless full opportunity were first given the defendant to justify Dabney's confinement. With this in mind an order was entered granting leave to the defendant to file such materials as may be considered on a motion for summary judgment which might tend to establish that Dabney's confinement and loss of privileges were imposed for reasons related to prison discipline, safety, or order. It was specifically stated that "failure to submit evidence refuting the plaintiff's contention that his treatment is arbitrary may result in the award of summary judgment for the plaintiff."

The defendant thereupon moved the Court to vacate its order. Accompanying the motion was a certified copy of Dabney's prison record showing no violations of any prison rules.

It is the defendant's position that the plaintiff has not properly moved for summary judgment, and that in any event he has not made out a case for an award of relief.

 The defendant himself has, however, made the equivalent of a motion for summary judgment. Such a motion "searches the record," and an award of judgment for the opposing party is permissible. The plaintiff at all times has filed sworn and notarized pleadings, which under the rule serve as the equivalent of the requisite affidavits. 6 Moore's Federal Practice, ¶ 56.11[3] at 2176 (2d ed. 1966); Fletcher v. Norfolk Newspapers, 239 F.2d 169 (4th Cir. 1956). The only sworn documents filed by the defendant in this case are the original answer, offering no justification for Dabney's treatment, and the prison record, which casts no light at all on his contentions. Because the exhibits fail to rebut the plaintiff's factual claims, the Court need not determine the weight to be given them in the face of the sworn allegations in a proper case. The Court can only conclude, in this instance, that the defendant concedes the truth of the facts set out in the complaint.

Certainly, having been offered full opportunity by the Court to demonstrate the existence of a triable factual dispute with the plaintiff's sworn allegations, and having failed to do so, the defendant cannot now contend that this litigation should be needlessly brought to trial. Indeed, in fairness, he does not take that position, but instead maintains that it should be resolved now in his favor. Both sides, therefore, seem agreed that only issues of law are involved, and it is for just such cases as this that summary judgment procedure is suited.

 It has been clear at least since Howard v. Smyth, *supra,* in 1966, that courts in this Circuit will intervene when punitive sanctions are imposed arbitrarily and without reasonable justification. This standard has been employed several times in intervening years. Loe v. Cunningham, No. 14,265, mem. decis. (4th Cir. June 10, 1970); Gaudet v. Cunningham, *supra;* Harper v. Royster, No. 13,972, mem. decis. (4th Cir. Feb. 4, 1970); Roth v. Brown, *supra;* Durham v. Peyton, No. 13,422, mem.

decis. (4th Cir., Oct. 31, 1969); Lewis v. Brown, *supra*.

■■ Here it is settled that no explanation was offered Dabney, nor any justification presented to this Court, for keeping the plaintiff in C-cell. Pat phrases to the effect that "it was the opinion that he should not be transferred" and such, are of no greater force than the cliche "for the good of the institution" found wanting in Howard v. Smyth, *supra*.

No reason being offered to continue to deny Dabney privileges accorded the rest of the population, it follows that this Court is bound to order the defendant to release him from such confinements and disabilities and permit him to remain among the general prison population so long as he behaves in conformity with generally applicable penitentiary rules. An order to that effect shall enter, and this memorandum shall serve as the findings of fact and conclusions of law contemplated by the rule.