Delores Dawn CALVERT, Plaintiff,

v.

WEST VIRGINIA LEGAL SERVICES
PLAN, INC., Defendant.

Civ. A. No. 76–0181–H.

United States District Court,
S. D. West Virginia,
Huntington Division.

Feb. 7, 1979.

James Allan Colburn, Huntington, W.
Va., for plaintiff.

George R. Higinbotham, Fairmont, W. Va., Joseph G. Martorella, Huntington, W. Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

This is an action in which Plaintiff invokes the Civil Rights jurisdiction of this Court to test the constitutionality of State action which has denied her access to free legal services when others whose financial status is similar have been granted such aid. Claiming to have been denied equal protection of the laws, she seeks monetary and injunctive relief authorized by 42 U.S.C. § 1983 and allowable under 28 U.S.C. § 1343.

Defendant West Virginia Legal Services Plan, Inc. is a nonprofit corporation, organized and existing under the laws of the State of West Virginia. The corporation was created to provide civil legal services to persons pecuniarily unable to pay for such services. It is funded principally by the Legal Services Corporation, a corporation established by 42 U.S.C. §§ 2996 et seq., to provide federal funds to qualified legal assistance programs. Additionally, Defendant receives State funds and is subject to certain governmental rules and regulations which are implemented by the State of West Virginia.

At the time this complaint was filed, Defendant provided services to eligible clients primarily through a judicare program. Under the program an eligible client would go to a participating privately-employed attorney of his or her choice for legal representation, and West Virginia Legal Services Plan, Inc. would, in turn, pay the legal fees incurred by the client in a scheduled amount agreeable to the lawyer and the Plan. It has come to the Court's attention that, recently, Defendant has suspended its judicare program. This, however, does not moot the question before the Court. Defendant now services all eligible clients through its regional staff attorneys, but the policy which gave rise to this litigation remains in effect. Thus, Plaintiff is denied still the services of Defendant although they are otherwise available in a slightly different manner than that described in the complaint.

Mrs. Calvert became involved in this action[1] after she sought to obtain a divorce from her husband. Financially unable to pay the attorney fees attendant with a divorce action, she made application to Defendant for assistance. Although she met financial requirements for participation, she was denied certification because of her inability to obtain personal service upon her husband. Defendant's disqualifying action was based upon a resolution adopted by its Board of Directors on June 17, 1975, which limited future acceptance of divorce cases to only those where the defendant could be personally served and where there were minor children of the marriage whose custody or support was in issue. Plaintiff contends that this policy denies her equal protection of the laws, in violation of the Fifth and Fourteenth Amendments.

Presently pending before the Court are motions filed by Plaintiff for conditional certification of a class and for summary judgment. Supporting memoranda and affidavits have been filed by both parties on these issues and the Legal Services Corporation, in addition, has filed an *Amicus Curiae* brief opposing Plaintiff's motion for summary judgment.

As a preliminary matter the Court must address the procedural question of whether summary judgment is an appropriate vehicle for disposition of the case. In that regard both parties agree that the Court's resolution of the substantive issue of whether Defendant's policy violates the equal protection clause of the Fourteenth Amendment will be dispositive of the case and, as to that issue, no genuine dispute as to any material fact exists. After examination of the record and present posture of

---

1. The original complaint in this action was filed by Phyllis Parsley on May 18, 1976. Delores Dawn Calvert was later added as an additional party plaintiff and Phyllis Parsley was dismissed for lack of standing.

the litigation the Court agrees and, explicitly, finds that no genuine dispute as to any material fact exists. Accordingly, the case is ripe for disposition per Plaintiff's motion. Likewise, summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under *Rule* 56 if it appears from the papers, affidavits and other proofs submitted by the parties that there are no disputed issues of material fact and that judgment for the non-moving party would be appropriate as a matter of law. *Lowenschuss v. Kane*, 520 F.2d 255 (2nd Cir. 1975); *Dabney v. Cunningham*, 317 F.Supp. 57 (E.D.Va.1970). *See* Wright & Miller, *Federal Practice and Procedure: Civil* § 2720.

The basis of Plaintiff's motion for summary judgment is that Defendant's policy arbitrarily creates two classes of potential divorce litigants: the first being those persons who can obtain personal service upon their spouse and whose action involves custody or support of minor children; and the second being all those persons who cannot obtain personal service upon their spouse and whose action does not involve the custody or support of minor children. Arguing from this premise Plaintiff contends that since this latter class of persons is eligible for all the services of Defendant except those provided in divorce litigation, the Defendant's action in isolating this group of individuals for denial of benefits in one specific area constitutes discrimination against an identifiable group of persons. Plaintiff further contends that Defendant's stated purpose of conserving limited resources is not a sufficiently compelling state interest, and, therefore, Defendant's policy creates an invidious distinction in violation of the equal protection clauses of the Fifth and Fourteenth Amendments.

■ Initially for sole purpose of passing upon the motion, the Court assumes that Defendant's assailed policy constituted State action. Next the Court must decide whether the disqualifying regulation is to be subjected to the strictest of scrutiny or a less rigorous test of determining whether it rationally furthers some legitimate articulated state purpose. *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977); *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

■ To this writer, it is beyond cavil that this case involves no discrimination against a suspect class. The Supreme Court has consistently held that financial need alone does not identify a suspect class for purposes of equal protection analysis. *Maher v. Roe, supra; San Antonio School Dist. v. Rodriguez, supra; Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Thus, it is not incumbent upon the Court to decide whether divorce is a fundamental right or something less, for Defendant's policy in no way, directly or substantially, interferes with Plaintiff's right to seek a divorce and, therefore, does not rise to the level of an impermissible interference. *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). *Mapes v. United States*, 576 F.2d 896, 901, 217 Ct.Cl. —— (1978).

The test to be applied then is whether Defendant's policy rationally furthers some legitimate articulated state purpose. The rational basis advanced by Defendant is that of conserving limited resources. Defendant contends that the policy can be justified in terms of legitimate state interests in allocating available funds in such a way as to meet the needs of the largest possible number of eligible individuals.

■ In the first five months of its existence West Virginia Legal Services Plan, Inc. operated without restrictions in an effort to serve all the legal needs of financially eligible clients. This practice resulted in a warning from the Legal Services Corporation that Defendant was overspending its grant and a suggestion to begin restricting the number of cases it accepted. Defend-

ant felt that it could best bring its divorce caseload, proportionate with other legal service demands, in line with projections of available monies through adoption of the policy in question. The fact that the adoption of this policy has resulted in a distinction among those individuals eligible for payment of legal fees in divorce actions does not necessarily result in invidious discrimination. The Equal Protection Clause does not require that a state must choose between attacking every aspect of a problem or not attacking the problem at all. *Dandridge v. Williams, supra,* 397 U.S. at 486, 487, 90 S.Ct. 1153.

In deciding this case the Court is presented with social and economic questions similar to those presented in a line of Supreme Court decisions exemplified by *Dandridge v. Williams, supra.* There the Court held that "in the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Id.,* 397 U.S. at 485, 90 S.Ct. at 1161; *Massachusetts Bd. of Retirement v. Murgia, supra; Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974); *accord, Mathews v. deCastro,* 429 U.S. 181, 185, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976). Such cases have uniformly accorded the states of the Union with a wide latitude in choosing among competing demands for limited public funds and, so long as decisions are rational and not invidious, efforts to tackle the problems of the poor and needy will not be subject to a "constitutional straightjacket" review. *Mathews v. deCastro, supra,* at 185, 97 S.Ct. 431, accord *Maher v. Roe, supra.*

■ This Court accepts, without question, the assertion that there are not sufficient public monies available to meet the legal needs of the poor adequately, and it is not surprising that opinions are sharply divided on how available funds should be allocated. The Equal Protection Clause, however, requires only that the allocation of funds be rationally based and free from invidious discrimination, and the Court finds that that standard was met in the regulations adopted. The wisdom or social desirability of the regulation is not for the Court's consideration. Judgment on such matter is reposed in the Congress and our legislatures, and this Court may not use the Fourteenth Amendment to invalidate a regulation because it thinks it improvident or unwise. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The Court's holding in this case reflects only its conclusion that the State has a legitimate interest in maintaining the economic stability of its legal services program, and in distributing its available resources in such a way as to serve as large a variety of legal needs as possible. The Court is satisfied that Defendant has adequately demonstrated this legitimate interest through its memorandum and supporting affidavits. The Constitution does not require Defendant to jeopardize or compromise its legitimate interests solely to create a more comprehensive legal services program than what it presently has. *Geduldig v. Aiello, supra.*

In advancing her equal protection argument, Plaintiff has relied on the Supreme Court's analysis of equal protection in *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); and *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). These cases are inapposite to Plaintiff's situation. Plaintiff's exclusion from obtaining the benefits which Defendant offers to other persons does not rise to the level of exclusion represented in those cases. They dealt with a complete denial of what the plaintiff sought to obtain. Plaintiff's exclusion from obtaining the benefit of Defendant's services in no way precludes her from seeking and obtaining a divorce. The Supreme Court, in *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), held that states may not deny access to divorce courts to those persons who cannot afford to pay the

required court fees and costs for service of process. The Supreme Court of Appeals of West Virginia, on two occasions since *Boddie*, has held that the filing of such actions in West Virginia is provided for by *W.Va. Code*, 1931, 59–2–1, as amended, and mandamus will lie to compel circuit courts to accept the filing of divorce actions without the payment of filing fees or costs. *Mars v. Luff*, 155 W.Va. 651, 186 S.E.2d 768 (1972); *Humphrey v. Mauzy*, 155 W.Va. 89, 181 S.E.2d 329 (1971).

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for summary judgment be, and the same is hereby, DENIED and that summary judgment for Defendant be, and the same is hereby GRANTED.[2]

2. Inasmuch as the case has been fully resolved by the ruling in favor of Defendant, the Court sees no necessity for and thus declines to take action on Plaintiff's motion for conditional certification of a class.