**Lucy S. CLARK, et al.**

v.

**UNITED STATES of America.**

**Civ. A. No. N–85–2053.**

United States District Court,
D. Maryland.

Jan. 9, 1986.

**102**

Lucy S. Clark, pro se.

Sheldon D. Clark, Sandy Spring, Md., for Lucy S. Clark.

Michael J. Salem, Washington, D.C. and Larry D. Adams, Asst. U.S. Atty., for defendant.

## MEMORANDUM

NORTHROP, Senior District Judge.

On May 17, 1985, the plaintiffs, Lucy and Sheldon Clark (Clarks), instituted action in this Court seeking an abatement of a $500 tax penalty assessed against them by the Internal Revenue Service for filing a "frivolous" tax return. On December 11, 1985 the plaintiffs amended this complaint to include a claim of relief from a second penalty of $500 imposed by the Service for filing a subsequent "frivolous" tax return. The plaintiff also seeks a refund of $150.00 partial payment paid to the United States.[1]

### FACTS

On April 12, 1983 the Clarks filed a timely tax return with respect to their 1982 tax year. On line 31 of the first page of the return they claimed an adjustment to their gross income in the amount of $1,408.00.

The taxpayers then attached a "Schedule A31" in order to explain this adjustment. "Schedule A31" consisted of a one page exposition outlining their opposition to expenditures of tax money for military advisors and equipment sent to the nation of El Salvador; expenditures of U.S. tax monies "in a manner to tempt and risk an attack of unacceptable destruction of the United States," ...; taxes and funds spent for genocidal and offensive nuclear weapons contrary to Judeo-Christian principles; and other unspecified violations of law.

At the conclusion of this explanation, the plaintiffs purported to show a total amount of money therefore "illegally taxed and spent." After further calculations on this same "Sch. A31" they determined that $289.00 of their tax was assessed in violation of laws. The plaintiffs alternatively calculated their tax due without considering the asserted adjustments to income. However, when they completed their tax due on the face of the form 1040 tax return, they relied on the calculation allowing the adjustments to income based on their opposition to the military spending.

In the same manner, the plaintiffs timely filed their 1983 return. However, while the Clarks had claimed a deduction from gross income by means of their "Sch. A31" on the 1982 return, they claimed a direct reduction in tax due on their 1983 return. This tax reduction was noted on the 1983 Form 1040 by a notation "Schedule 39" on the return.[2] "Schedule 39" set forth four objections to United States policy similar to those stated in their 1982 return: objections to paying for "Central Intelligence Agency operations against Nicaraugua," objections to the use of U.S. tax dollars to pay for the arms, munitions, and equipment furnished to the government of El Salvador; objections to the use of U.S. tax dollars to pay for the "building and deployment of genocidal nuclear weapons without

---

1. 26 U.S.C. § 6703(c)(1) requires that parties wishing to contest the assessment of a penalty must remit 15% of the assessment to the Internal Revenue Service to challenge the assessment.

2. The net effect of the Clarks' actions in 1982 was to claim a tax credit because of their objections to U.S. foreign policy expenditures, although the plaintiff's did not enter the amount on the Form 1040 pertaining to tax credits.

reasonable effort to achieve arms control agreements ...''; objections to financing activities in violation of other laws. The plaintiffs then determined that $598 should be deducted from their taxes.

Subsequently, the Internal Revenue Service disallowed the adjustment to income based on their objections to United States expenditures. On July 11 and 12, 1984, the Clarks then filed amended returns for both the tax years of 1982 and 1983, respectively, fully paying the disputed amount as calculated by the IRS, together with penalties and interest. After reviewing the amended return for 1982, the I.R.S. determined that the plaintiffs had overpaid for that year, and on October 5, 1984 sent the Clarks a refund check of $28.24.

Then, on October 15, 1984, the Internal Revenue Service assessed a penalty of $500 against the plaintiffs for filing a frivolous income tax return.

On October 30, 1984, the Clarks paid $75 (15% of the penalty), as provided by 26 U.S.C. § 6703(c)(1), and simultaneously claimed a refund of such payment, plus abatement of the frivolous return penalty. When the Commissioner failed to grant or refuse the refund claim within six months of the filing thereof, the Clarks brought this suit.

Subsequently, on April 15, 1985, the Internal Revenue Service assessed another penalty of $500 against the plaintiffs for filing another frivolous income tax return in violation of 26 U.S.C. § 6702. On May 13, 1985, the plaintiffs duly contested this assessment by remitting $75 (15% of the penalty).

The basis for the present action thus involves the legitimacy of the penalty assessed against the plaintiffs for allegedly filing two frivolous tax returns.

## ANALYSIS

The plaintiffs have filed a motion for summary judgment claiming that the assessment of the penalties was inappropriate because:

(1) At the time the penalty was assessed, the Clarks had fully paid their taxes; (2) the penalty provision does not apply to them on its face; and (3) the reduction/credit claimed on the returns was not frivolous.

After reviewing the pleadings, motion and memoranda in this case, the Court concludes that no hearing is necessary for decision in this matter. Local Rule 6. For the reasons set forth, the plaintiff's motion is DENIED, and the Court enters summary judgment in favor of the Defendant.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall issue only when the pleadings before the Court establish "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In the instant case the parties are in complete agreement as to all the material facts, and the entire dispute involves the interpretation of a section of the Internal Revenue Code.

Although the defendant, United States, has not requested summary judgment the Court has determined that summary judgment in favor of the defendant is appropriate in this case. "... [W]here one party has invoked the power of the Court to render a summary judgment against his adversary, it is reasonable that this invocation gives the Court power to render a summary judgment for his adversary if it is clear that the case warrants that result." 6 Moore's Federal Practice ¶ 56.12 (2nd ed. 1985).

"... [S]ummary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56 if it appears from the papers, affidavits, and other proofs submitted by the parties that there are no disputed issues of material fact and that judgment for the non moving party would be appropriate as a matter of law." *Calvert v. West Virginia Legal Services Plans, Inc.*, 464 F.Supp. 789, 791, (S.D.W.Va.1979); *see also Lowenschuss and Kahn*, 520 F.2d 255 (2nd Cir.1975); *Dabney v. Cunningham*, 317 F.Supp. 57 (E.D.Va.1970). 10A Wright,

Miller & Kane, Federal Practice and Procedure: Civil 2d § 2720. For purposes of clarity, each of the plaintiffs' assertions will be addressed independently.

I. *Should the frivolous return penalty apply in situations where no tax is due at the time the penalty is assessed?*

The plaintiffs first contend that the penalties assessed against them were inappropriate because at the time the penalty was assessed, they had already paid all due taxes, penalties, and interest. On July 11 and July 12, 1984 the Clarks filed amended returns for the tax years of 1982 and 1983, respectively, and enclosed full payment of taxes for those years, together with penalties and interest. Then some three months later, the I.R.S. assessed the first penalty, and then some nine months after full payment, the Service assessed a second penalty.

The basis of the Clarks' contention is that Section 6702, was never intended to apply to a situation where the taxpayer had already paid the appropriate tax in full prior to a penalty assessment. The legislative history of the Act indicates that Congress enacted the frivolous penalty provisions in order to deter the filing of protest returns. Prior to the enactment of this section, penalties for filing a protest return were effective only when the taxpayer had underpaid his tax. The legislative history states:

*Present Law*

Under present law, a taxpayer who files a protest return ... may be subject to a penalty for failure to file a return; or for negligence or fraud. These penalties, however, are measured as a percentage of the underpayment of tax. Thus, if a taxpayer has paid at least the correct amount of tax through estimated tax or wage withholding, there is no penalty for filing a protest return.

*Reasons for Change*

The committee is concerned with the rapid growth in deliberate defiance of the tax laws by tax protestors. The Internal Revenue Service had 13,600 illegal protest returns under examination as of June 30, 1981. Many of these protestors are induced to file protest returns through the criminal conduct of others. These advisors frequently emphasize the lack of any penalty when sufficient tax has been withheld from wages and encourage others to play the "audit lottery." The committee believes that an immediately assessable penalty on the filing of the protest forms will help deter the filing of such returns and will demonstrate the determination of the Congress to maintain the integrity of the income tax system.

S.Rep. No. 97–494, 97th Cong., 2d Sess. 277, *reprinted* in 1982 U.S.Code Cong. & Ad.News [Vol. 2], 781, 1023. The legislative history, therefore, clearly demonstrates that the frivolous penalty provision was intended to apply to taxpayers who owed no tax. It is the filing of the frivolous return itself that the statute is intended to deter. In fact, as the legislative history indicates, the section was specifically enacted to deter the filing of frivolous returns by taxpayers who in fact owed no outstanding taxes. *See, Tibbetts v. Secretary of the Treasury,* 577 F.Supp. 911, 913 (W.D.N.C.1984).

Therefore, the Court concludes that notwithstanding the fact that the plaintiffs had paid all taxes due prior to the assessment of the penalty, Section 6702 permits the Internal Revenue Service to impose such a penalty.

II. *Did the Plaintiffs' Conduct Violate the Provisions of Section 6702?*

The plaintiffs contend that by its very language, Section 6702 is to apply only in limited situations, and that the acts and conduct of the plaintiffs did not offend the terms of the statute. 26 U.S.C. § 6702 states:

(a) Civil Penalty—If—

(1) any individual files what purports to be a return of the tax imposed by subtitle A but which—

(A) does not contain information on which the substantial correctness of the self-assessment may be judged, or

(B) contains information that on its face indicates that the self-assessment is substantially incorrect; and

(2) the conduct referred to in paragraph (1) is due to—

(A) a position which is frivolous, or

(B) a desire (which appears on the purported return) to delay or impede the administration of Federal income tax law,

then such individual shall pay a penalty of $500.

(b) Penalty in addition to other penalties—The penalty imposed by subsection (a) shall be additional to any other penalty provided by law.

In other words, to subject a taxpayer to a civil penalty for filing a frivolous return, three requirements must be met.

First, the taxpayer must file what purports to be a return. In the present case, the taxpayers do not dispute that their 1982 and 1983 filings constituted returns. Second, the return must *either* fail to contain sufficient information to ascertain whether the self-assessment is correct, *or* the return must contain information which facially indicates that the self-assessment is substantially incorrect. Third, the reasons for the inaccurate self-assessment must *either* be frivolous, *or* it must demonstrate a desire by the taxpayer to impede or delay the administration of the income tax laws. *Scull v. United States*, 585 F.Supp. 956 (E.D.Va.1984).

■ It is undisputed that the Clarks provided all necessary information from which the Internal Revenue Service could have ascertained the proper taxes for the years in question. Therefore, Section 6702(a)(1)(A) was not violated. However, Section 6702(a)(1)(B) further provides that when the taxpayer files a tax return that contains information which on its face indicates that the self-assessment is substan-

tially incorrect then the taxpayer also may be subject to a frivolous penalty. In the instant case, both the 1982 and 1983 returns contained attachments which set forth explanations as to why the Clarks were not paying their proper amount of tax, according to Internal Revenue regulations. In the 1982 tax return the plaintiffs alternatively calculated their proper adjusted gross income without considering deductions based on their opposition to the specific expenditures. However, the Clarks then used the incorrect calculations to determine, report and pay their 1982 income taxes. In a similar vein, the Clarks utilized an incorrect tax credit to reduce the amount of tax due, clearly indicating their reasons for doing so. In the final analysis both the 1982 and 1983 tax returns contained information that facially demonstrated the substantial incorrectness of the returns. The Clarks then proceeded to pay their taxes according to those calculations based on opposition to these military expenditures.

In the recent case of *Jenney v. United States*, 755 F.2d 1384 (9th Cir.1985), the Court dealt with a case remarkably similar to the present one. In that case, the taxpayers, filed a joint 1982 federal income tax return on Form 1040. On a Schedule A attached to the return, the taxpayers reported itemized deductions of $24,382.00. Schedule A made reference to a "Supplement # 2" to explain the reasons for these deductions. "Supplement 2" then listed miscellaneous deductions, the largest of which, was a deduction based on conscience. The taxpayers then attached a statement to "Supplement # 2" to explain this conscience deduction. In their explanation, the taxpayers indicated that they were claiming a deduction out of a conscientious objection to war and to preparations for war. This "conscience deduction" then reduced their tax liability to $5,273 which is what they reported as their tax liability on line 59 of the Form 1040. The first issue before the Court, was whether the taxpayer to avoid the penalty, must report on the proper line of the form 1040,

the correct tax or whether the penalty can be avoided by reporting the correct self-assessment in an exhibit, letter or attachment.

After examination of the legislative history of Section 6702, the Court determined that a taxpayer is liable for the penalty if the amount of tax liability as reported on the face of the return is substantially incorrect. The Court concluded that the penalty would be applicable even when, supplements and attachments provide explanations and alternative assessments. "In our view, the term 'self-assessments' refers to the amount of tax liability reported on the face of the return and not to the amount reported in attached statements or explanations, because the purpose of our tax system of self-assessment 'is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished.'" *Jenney v. United States*, 755 F.2d 1384, 1386 (9th Cir.1985), citing *Commissioner v. Lane-Wells, Co.*, 321 U.S. 219, 223, 64 S.Ct. 511, 513, 88 L.Ed. 684 (1944).

In conclusion, it is clear that the Clarks, like the taxpayers in *Jenney*, did not enter the correct amount due on the face of the form 1040 for the years 1982 and 1983. They explained their refusal to do so in attached statements. Therefore, the Clarks did in fact file a return which "contains information that on its face indicates that the self-assessment is substantially incorrect." 26 U.S.C. § 6702(a)(1)(B).

III. *Were the plaintiffs' claims for a deduction and tax credit based on a frivolous position?*

The third requirement under Section 6702 for assessing a civil penalty is that the incorrect assessment by the taxpayer is due to "a position which is frivolous" *or* "a desire ... to delay or impede the adminis-trative of federal income tax law ..." 26 U.S.C. § 6702(a)(2). The plaintiffs assert that their reasons for deductions of tax credits were not frivolous.

The legislative history of Section 6702 states that "[t]he penalty would be imposed against any individual filing a 'return' showing an incorrect tax due, or a reduced tax, because of the individual's claim of a clearly unallowable deduction such as a ... 'war tax' deduction under which the taxpayer reduces his taxable amount of his taxes going to the Defense Department budget, etc....." S.Rep. No. 97-494, 97th Cong., 2d Sess. 278, *reprinted* in 1982 U.S. Code Cong. & Ad.News [Vol. 2] at 1024.

The plaintiffs recognizing the legislative history of Section 6702, assert that they are not claiming a generalized "war tax" deduction, but instead claim a refund based on violations by the United States of "specific domestic statutes and international agreement to which the United States is a signatory....." (Plaintiffs' Memorandum in Support of Summary Judgment).

They further contend that since there has been no adjudication of the basis of their claim, there is no justification for characterizing their objections to the tax payment as "frivolous".[3]

It is clear that what the plaintiffs have done is to claim a deduction and tax credit based on estimates of the amount of taxes being used for allegedly illegal or improper purposes. The Internal Revenue Code of 1954 provides for no such procedure and contains no statutory authority for reduction of taxable income or any tax credit on the grounds claimed by the plaintiffs.

It is well established law that deductions and credits are matters of legislative grace. If Congress has not specifically legislated them, they do not exist. *New Colonial Ice Co., v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934); *Lull v. Commissioner*, 434 F.2d 615, 617 (4th Cir.

3. The Clarks had previously filed suit seeking a refund of their 1982 and 1983 taxes on grounds that they were entitled to these foreign policy deductions and tax credits. That suit was dis-missed by this Court on June 4, 1985 ruling that the taxpayers lacked standing. *Clark v. United States*, 609 F.Supp. 1249 (D.Md.1985).

1970); *Baltimore Aircoil Co. v. United States,* 333 F.Supp. 705, 709 (D.Md.1971).

Further, "[t]here is no provision in the Internal Revenue Code that provides a credit or deduction based on a taxpayer's disagreement with the uses to which tax payments will be put." *Welch v. United States,* 750 F.2d 1101, 1107 (1st Cir.1985). See also: *Autenrieth v. Cullen,* 418 F.2d 586 (9th Cir.1969), *cert. denied,* 397 U.S. 1036, 90 S.Ct. 1353, 25 L.Ed.2d 647 (1970) (taxpayers have no constitutional right to refuse to pay federal taxes because of their anti-war sentiments).

Congress enacted Section 6702 specifically intending to deter non payments of taxes based on oppositions to military expenditures. The fact that the plaintiffs do not characterize their claims of a deduction or credit as a "war tax" is irrelevant.

■ The legislative history of that section clearly indicates that Congress was concerned about the great numbers of taxpayers who were filing returns with incorrect taxes due based on their opposition to specific governmental expenditures. This is precisely why the plaintiffs claimed these deductions and credits in their 1982 and 1983 returns. The fact that the plaintiffs do not oppose all military spending does not transform their claim into a "non-frivolous" one.

In conclusion, the Court has determined that the penalty for filing a frivolous tax return is properly applicable to the plaintiffs. First, the legislative history of the Act plainly indicates that the penalty is appropriate for the *filing* of a frivolous return. Second, the language of the statute embraces the plaintiffs' conduct, and third, the plaintiffs' assertion that their returns were not frivolous goes against established case law and legislative history.

### ORDER

In accordance with the foregoing Memorandum, and for the reasons set forth therein, IT IS, this 9th day of January, 1986, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiffs' motion for summary judgment BE, and the same hereby IS, DENIED;

2. That judgment BE, and the same hereby IS, entered in favor of the defendant and against the plaintiffs;

3. That the Clerk of Court shall enter this case as CLOSED on this Court's docket; and

4. That the Clerk of Court shall mail copies of this Order and of the foregoing Memorandum to the plaintiffs and to counsel for the defendant.